Honorable Franklin D. Burgess

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

MICHAEL BRANNAN, Individually, as
Administrator of the estate of BARBARA
BRANNAN, deceased, and as Parent and Natural
Guardian for his minor children STEPHANIE
BRANNAN and RHIANNON BRANNAN,

              Plaintiffs,

              vs.

NORTHWEST PERMANENTE, P.C.; KAISER
FOUNDATION HEALTH PLAN OF THE
NORTHWEST; MINDY ROTHBARD, M.D.;
and MIKE G. LIN, M.D.,

              Defendants.

No. 05-5157 FDB

DEFENDANTS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT

Noted: Friday, September 29,
2006

## I. RELIEF REQUESTED.

Defendants seek a partial summary judgment as a matter of law on six separate claims

of negligence, claims of loss of consortium and negligent infliction of emotional distress, and

claims against the entity referred to as "Kaiser Permanente," as raised by the plaintiff in his

Third Amended Complaint.

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324    FAX (253) 627-8928

## II. STATEMENT OF FACTS.

On the day of her death, July 16, 2002, Barbara Brannan was a 39 year old married woman with two children, Rhiannon, aged 12 years and Stephanie, aged 10 years. Ms. Brannan had a long history of medical problems and had treated with several health care professionals during her adult life. Within the last five years of her life, these health professionals included persons at Harborview Medical Center and the Salmon Creek Medical Officer of Defendant Northwest Permanente, P.C. (hereinafter referred to as "Salmon Creek"). Some of Ms. Brannan's medical problems within the five years before her death included back surgery and pain associated with an robbery at a store where she worked as a cashier in June 2000, a long history of chronic sinusitis with four sinus procedures in 2000, ectopic surgery in 1998, and depression. In January 2000, an ECG was taken at Harborview Medical Center incidental to a sinus surgery. The results indicated an abnormal ECG and a left bundle branch block. That surgery, and many subsequent surgeries under general anesthetic, went forward without any problems. Ms. Brannan never discussed any issues pertaining to cardiac symptoms and Dr. Lin never had any reason to treat her for cardiac symptoms. Over these same years, Ms. Brannan smoked somewhere between one to four packs of cigarettes a day and was obese.

From October 2001 to the time of her death, she was treated by Defendant Dr. Mike Lin, an internist employed by Northwest Permanente. Although Dr. Lin referred Ms. Brannan to various sub-specialities within the Salmon Creek facility, he was her primary care physician and he treated her for various physical problems. Dr. Lin also prescribed and monitored pain and other medications for Ms. Brannan.

In May 2002, Ms. Brannan complained to Dr. Lin of symptoms of attention deficient hyperactive disorder ("ADHD") or attention deficient disorder ("ADD"), with which she had

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd

1  been diagnosed with as a child. Dr. Lin referred her to Deborah M. DuBoff, a mental health

2  professional for evaluation of ADD. Ms. Brannan saw Ms. DuBoff on May 24, 2002 who

3  conducted a mental health evaluation. Ms. DuBoff's assessment was ADD as well as

4  adjustment disorder with depressed mood and chronic pain. Ms. DuBoff suggested that

5  stress management and medication should be considered, as well as couple counseling to

6  resolve partner issues. *See* Ex. A to Declaration of Paula T. Olson. Ms. Brannan was

7  referred to Defendant Dr. Mindy Rothbard, a psychiatrist to determine if medication could

8  help her with ADD.

9        On June 13, 2002, Dr. Rothbard examined Ms. Brannan and conducted a

10  psychological evaluation to determine if, in fact, Ms. Brannan did suffer from ADD or

11  ADHD. Based on her interview with Ms. Brannan, Dr. Rothbard concluded that Ms.

12  Brannan did have ADHD and prescribed a trial course of amphetamine salts, Adderall, to be

13  taken "one tablet by mouth every morning for 3 days, then 1 tablet every morning and 1

14  tablet midday." *See* Ex. B to Olson Decl. The prescription was properly filled at the Salmon

15  Creek pharmacy.

16        On June 26, 2002, Ms. Brannan called Dr. Rothbard and reported that she was doing

17  better, was more focused, and had increased her dosage. *See* Ex. C to Olson Decl. Dr.

18  Rothbard refilled her Adderall prescription for 90 days with directions to take 40 mg per day,

19  and confirmed that Ms. Brannan would follow up with Ms. DuBoff for counseling. *Id.*

20        On July 16, 2002, Ms. Brannan and her family were vacationing at the Mount St.

21  Helens Monument. Ms. Brannan collapsed and died in the gift shop. The autopsy performed

22  immediately after her death found that Ms. Brannan had "mild dilated cardiomyopathy and

23  interstitial and perivascular and myocardial fibrosis." *See* Plaintiff's Third Amended

24  Complaint, Dkt. 104, para. no. 37. The Cowlitz County Coroner's Office attributed the cause

25

26

27

28

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324   FAX (253) 627-8928

1    of her death to cardiac dysrythmia due to myocardial fibrosis and amphetamine effect." *Id.,*

2    para. no. 38.

3        Thereafter, Michael Brannan, Ms. Brannan's husband, filed this complaint against

4    the defendants pursuant to Washington's survival and wrongful death statutes for medical

5    malpractice resulting in Ms. Brannan's death and the injuries experienced by her estate, her

6    husband and children. Plaintiff also alleges negligent infliction of emotional distress

7    ("NIED") and loss of consortium.  In his Third Amended Complaint, plaintiff alleges

8    numerous instances where he believes the defendants were negligent.  Among them are

9    allegations that Dr. Rothbard and/or Dr. Lin was negligent in prescribing Adderall when Ms.

10   Brannan had a left bundle branch block and an abnormal ECG. Plaintiff also alleges that the

11   defendants should have followed up on the abnormal ECG when Ms. Brannan began being

12   treated at Salmon Creek. While the defendants strongly contest and deny each and every

13   allegation in the plaintiff's complaint, the  following allegations are the subject of this

14   motion:[1]

15        1.  failing to heed the admonition of Dr. Michael Lin that the decedent should be

16   weaned for habit forming drugs (para. no. 2 to plaintiff's complaint);

17        2.  prescribing and furnishing amphetamine combination salts for a patient with a

18   known pre-disposition towards addictive habit-forming drugs (para. nos. 4; 18);

19        3.  failing to determine and prescribe the amphetamine salts in the "lowest possible

20   dosage" (para. no. 8);

21        4.  prescribing amphetamine salts to a patient who consumed a pot of coffee each

22

23        [1]This list comes from pages 11 through 13 of Plaintiff's Third Amended Complaint
24   for Wrongful Death and Negligent Infliction of Emotional Distress, dkt. no. 104, filed on
     August 18, 2006, paragraphs 1 through 27.  The defendants do not raise all of the alleged
25   negligent acts in this motion.

26                                                          BURGESS FITZER, P.S.
     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4              ATTORNEYS AT LAW
27   S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd                1145 BROADWAY STREET, SUITE 400
                                                            TACOMA, WASHINGTON 98402-3584
                                                            (253) 572-5324   FAX (253) 627-8928
28

1  morning (para. no. 10);

2      5.  prescribing amphetamine salts for decedent given family history of hypertension

3  (para. no. 11); and

4      6.  failing to properly treat decedent for a mental health condition (para. no. 22).

5      In this motion, defendants seek summary judgment on each of these six allegations

6  as well as dismissal of the NIED claims by the children, loss of consortium claims and any

7  claims against the entity referred to as "Kaiser Permanente."

8  **II. ISSUES.**

9      The issues presented in this motion are:

10      1.    Whether the defendants are entitled to summary judgment on the six

11          specified claims of negligence raised by plaintiff for lack of evidence.

12      2.    Whether the defendants are entitled to summary judgment on the children's

13          claim of negligent infliction of emotional distress for lack of evidence.

14      3.    Whether the plaintiff's claims of loss of consortium should be dismissed as

15          separate claims.

16      4.    Whether any claims brought against the entity described as "Kaiser

17          Permanente" should be dismissed for lack of jurisdiction.

18  **III. LEGAL MEMORANDUM.**

19      Summary judgment is to be granted where "the pleadings, depositions, answers to

20  interrogatories, and admissions on file, together with the affidavits, if any, show that there

21  is no genuine issue as to any material fact and that the moving party is entitled to a judgment

22  as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317

23  (1986) ("there can be no genuine issue as to any material fact, since a complete failure of

24  proof concerning an essential element of the nonmoving party's case necessarily renders all

25

26

27  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5
    S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd

28

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324    FAX (253) 627-8928

1    other facts immaterial.") (internal quotations omitted).

2    **A.**    *Standard of Summary Judgment Under Washington's Medical Malpractice Law.*

3        Under Washington law, a plaintiff must establish that the alleged injury resulted from

4 the failure of a health care provider to follow the accepted standard of care.   RCW

5 7.70.030(1).   To establish a breach of the standard of care, a plaintiff must prove that the

6 health care provider (1) "failed to exercise that degree of care, skill, and learning expected

7 of a reasonably prudent health care provider at that time in the profession in the State of

8 Washington acting in the same or similar circumstances; and (2) that such failure was a

9 proximate cause of the injury complained of."   RCW 7.70.040.   Case has interpreted these

10 elements to pose the following questions in a medical malpractice case:  "(1) What is the

11 accepted standard of care for the particular medical treatment at issue? (2) Did the health care

12 professional meet that standard of care? (3) Did the failure to meet the standard proximately

13 cause the plaintiff's injury?" *Webb v. Neuroeducation Inc., P.C.,* 121 Wash. App. 336, 347-

14 48, 88 P.3d 417 (2004). *See also Judy v. Hanford Envtl. Health Found.,* 106 Wash. App. 26,

15 38, 22 P .3d 810 (2001).

16        Expert testimony is generally required in order to prove causation. *Douglas v.*

17 *Freeman,* 117 Wash.2d 242, 252, 814 P.2d 1160 (1991). The evidence will be considered

18 insufficient to support a finding of proximate cause if, considering all the medical testimony

19 presented, a jury would have to resort to speculation or conjecture in determining the causal

20 relationship. *McLaughlin v. Cooke,* 112 Wash.2d 829, 837, 774 P.2d 1171 (1989). The

21 plaintiff must provide medical testimony that demonstrates the alleged negligence "more

22 likely than not" caused the condition leading to the injury; that the defendants' actions

23 "might have," "could have," or "possibly did" is not sufficient. *Merriman v. Toothaker,* 9

24 Wash. App. 810, 814, 515 P.2d 509 (1973). *See also Conrad v. Alderwood Manor,* 119

25

26 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6

27 S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd

28

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324   FAX (253) 627-8928

1  Wash. App. 275, 282, 78 P.3d 177 (2003). Defendants have carefully reviewed all of the

2  reports and depositions of the plaintiff's experts and there is no evidence to support the six

3  specific claims of negligence against Dr. Rothbard raised in this motion.

4         A proximate cause is one that in natural and continuous sequence, unbroken by an

5  independent cause, produces the injury complained of and without which the ultimate injury

6  would not have occurred. *Attwood v. Albertson's Food Centers, Inc.,* 92 Wash. App. 326,

7  330, 966 P.2d 351 (1998). Washington law recognizes two elements of proximate cause:

8  cause in fact and legal causation. *Hartley v. State,* 103 Wash.2d 768, 777-78, 698 P.2d 77

9  (1985). Cause in fact refers to the "but for" consequences of an act, or the physical

10  connection between an act and an injury. *Hartley,* 103 Wash.2d at 778 (citing *King v. City*

11  *of Seattle,* 84 Wash.2d 239, 249, 525 P.2d 228 (1974)). Evidence establishing proximate

12  cause in medical malpractice cases must rise above speculation, conjecture or mere

13  possibility. *Reese v. Stroh,* 128 Wash.2d 300, 309, 907 P.2d 282 (1995). Although

14  proximate cause is generally an issue of fact for the jury, certain circumstances can make it

15  a question of law for the court, such as, the absence of proof. *See e.g. Bernethy v. Walt*

16  *Failor's Inc.,* 97 Wash.2d 929, 935, 653 P.2d 280 (1982).

17         Under Washington State law, the defendants may more for summary judgment based

18  on the absence of competent medical evidence to establish a prima facie case. *Young v. Key*

19  *Pharmaceuticals, Inc.,* 112 Wash.2d 216, 226, 770 P.2d 182 (1989). Here, defendants move

20  for summary judgment on the basis that plaintiff lacks proof of his prima facie case of

21  proximate cause on six separate claims.

22  **B.      *Plaintiff fails to provide evidence that Dr. Rothbard violated the standard of care,***
           ***or was negligent, in six specific claims, and that not one of these claims more***
23         ***likely than not caused Ms. Brannan's death.***

24         As discussed above, to succeed, plaintiff must present expert evidence that Dr.

25

26                                                    BURGESS FITZER, P.S.
   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7        ATTORNEYS AT LAW
   S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd            1145 BROADWAY STREET, SUITE 400
27                                                    TACOMA, WASHINGTON 98402-3584
                                                      (253) 572-5324   FAX (253) 627-8928
28

1    Rothbard violated the standard of care because she failed to work with Dr. Lin in weaning

2    Ms. Brannan off habit forming drugs, prescribed Adderall to someone with a predisposition

3    towards addictive habit-forming drugs, who drank a pot of coffee each morning, and had a

4    family history of hypertension.  Plaintiff must further provide expert testimony that Dr.

5    Rothbard breached the standard of care by failing to prescribe the lowest possible dosage and

6    by failing to properly treat a mental health disorder.

7         It is undisputed that, before she prescribed Adderall to Ms. Brannan, Dr. Rothbard

8    did not pick up the telephone to discuss Dr. Lin's plans to reduce Ms.  Brannan's pain

9    medication and Dr. Rothbard's intentions to prescribe Adderall, Dr. Rothbard had access to

10   Ms. Brannan's medical information and she knew that Dr. Lin had a pain contract with Ms.

11   Brannan.  By virtue of the notes, Dr. Rothbard also knew that Ms. Brannan used pain

12   medication and that there were physiological reasons for such medication.  Plaintiff has no

13   evidence that Dr. Rothbard's failure to discuss with Dr. Lin her intention to prescribe

14   Adderall, Dr. Lin's desire to wean Ms. Brannan from pain medication, or Ms. Brannan's

15   alleged predisposition to habit forming medication was negligent and more likely than not

16   caused her death.

17        Plaintiff has no evidence, certainly none rising to a level of reasonable medical

18   certainty, that the fact that Ms. Brannan drank a pot of coffee or had a family history of

19   hypertension caused her death. Plaintiff alleges that these facts were contraindications for the

20   ingestion of Adderall by Ms. Brannan's medical history. This theory was rejected in *Silves*

21   *v. King*, 93 Wash. App. 873, 970 P.2d 790 (1999).   There, plaintiff was prescribed

22   indomethacin, a nonsteroidal anti-inflammatory drug.  At the time, plaintiff was also taking

23   heparin, an anticoagulant and he experienced a pulmonary hemorrhage within two weeks.

24   Summary judgment was granted for the hospital based on claims against the nurse and

25

26   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8
     S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd

27

28

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324   FAX (253) 627-8928

1    pharmacist and the jury returned a verdict for the doctor. *Id.* at 792. On appeal, the court

2    affirmed the results in the trial court and found that simply because the Physicians' Desk

3    Reference ("PDR") recommended caution when prescribing drugs to a person with

4    coagulation defects, no absolute contraindications existed. *Id.* at 794. Here, in 2002 and

5    currently, there is no absolute contraindication to prescribing Adderall to an adult who drank

6    coffee, had a family history of hypertension, and was on a pain contract. Simply because

7    other doctors might treat patients differently, such differences are not evidence of medical

8    malpractice. *See Hayes v. Hulswit*, 73 Wash.2d 796, 800, 440 P.2d 849 (1968) (holding that

9    a difference of professional opinion as to diagnosis and treatment is not evidence of

10   malpractice).

11        There is no evidence that Dr. Rothbard violated the standard of care by failing to

12   adequately treat a mental health condition. Instead, the opposite is true. In only a little over

13   a month between Dr. Rothbard's evaluation of Ms. Brannan and the prescription of Adderall,

14   Ms. Brannan called and told Dr. Rothbard that she was much improved. *See* Ex. C to Olson

15   Decl. That conversation alone proves that Dr. Rothbard's treatment of Ms. Brannan's ADD

16   symptoms was successful. Ms. Brannan had not yet begun other aspects of Dr. Rothbard's

17   recommendations such as couple counseling with Ms. DuBoff. By Ms. Brannan's statements

18   alone, plaintiff fail to prove this claim and the defendants are entitled to summary judgment.

19

20   **C.    Because Rhiannon and Stephanie did not see their mother's collapse or death,
         no facts support their NIED claims.**

21

22        A recent Washington case, *Colbert v. Moomba Sports, Inc.*, 132 Wash.2d 916, 135

23   P.3d 485 (2006), requires that, in order to prove a NIED claim, the plaintiff must have

24   observed the accident's immediate aftermath and effect on the victim, before third parties,

25   such as rescuers and paramedics, substantially altered the accident scene or the victim's

26

27   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9
     S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd

28

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324    FAX (253) 627-8928

1   location or condition. *Id.* at 931. Therefore, the key to the tort is that the plaintiff observed

2   the circumstances of the injury or death of the victim.

3       Neither Stephanie or Rhiannon saw their mother die. According to Dr. Carter, the

4   girls were in another part of the store when their mom collapsed. They heard a crash but they

5   were taken away into the employee lounge while their mother was tended to. Even if they

6   saw their mother collapse, they had no knowledge that their mother was dying or had died.

7   They only knew that she had fallen. They learned of her death at a later time. Although the

8   sight of their mother's collapse was scary, it does not amount to the type of "gruesome

9   scene" contemplated by the court in the *Colbert* case or the sensory-dependent details such

10  as a crushed body, bleeding, cries of agonized pain discussed in *Hegel v. McMahon*, 136

11  Wash.2d 122, 125-26, 960 P.2d 424 (1998) (father saw son after a motorcycle accident and

12  before medics arrived, with his leg cut off and his body split almost in half). Both children

13  were examined by Dr. Leslie Carter, a licensed psychologist. Dr. Carter reported that the

14  children did not see their mother collapse and that they stayed in another room with family

15  members and staff while their mother was being attended to. *See* Ex. D and E of Olson Decl.

16

17      The children's NIED claims in Counts IV and V of the Third Amended Complaint

18  should be dismissed. The children are not without remedy for their pain and suffering from

19  their mother's death, however, provided they can prove negligence on the part of the

20  defendants. If they are successful, damages allowed in the wrongful death action will

21  compensate them for their loss.

22  **D.    Plaintiff's loss of consortium claims are not separate claims but part of damages allowed under the wrongful death/survival statutes.**

23

24      Plaintiff's Third Amended Complaint lists loss of consortium as separate claims. *See*

    Counts VI, VII and VIII of the Third Amended Complaint. These are not separate claims but

25

26  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10
    S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd

27

28

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324   FAX (253) 627-8928

1    separate items of damages available under the wrongful death/survival statutes. RCW

2    4.20.010 and .020 created a cause of action for the spouse and children of a deceased who

3    died because of a wrongful act. Elements of damages under these statutes include loss of

4    love, affection, care, service, companionship, society, training and consortium that the

5    deceased would have provided to these beneficiaries. *Chapple v. Granger,* 851 F.Supp.

6    1481, 1487 (E.D. Wash. 1994) (citing *Bowers v. Fibreboard Corp.*, 66 Wash. App. 454, 460,

7    832 P.2d 523 (1992).

8       To the extent that plaintiff intends separate claims of loss of consortium, an order

9    of summary judgment should be entered.

10    **E.**    **Any claims against Kaiser Permanente should be dismissed because it is not a**
**corporate entity registered in Washington State nor does it do business in the**
11      **State of Washington.**

12       In order for the trial court to have personal jurisdiction over a corporate entity, it must

13    be a citizen of Washington or do business in the state. *See* RCW 4.28.185(1)(a):

14      Any person, whether or not a citizen or resident of this state, who in person
or through an agent does any of the acts in this section enumerated, thereby
15      submits said person, and, if an individual, his personal representative, to the
jurisdiction of the courts of this state as to any cause of action arising from
16      the doing of any of said acts:

17      (a) The transaction of any business within this state . .

18    Kaiser Permanente is not a registered corporation within the State of Washington, nor does

19    it do business in the State of Washington. *See* Ex. F to Olson Decl. It is simply a trade name

20    and inaccurately describes Northwest Permanente or the Salmon Creek facility.

21       Plaintiff does not specifically name Kaiser Permanente as a defendant, however, he

22    does refer to the Northwest Permanente as "Kaiser Permanente" to the extent that anyone

23    reading plaintiff's Third Amended Complaint would believe that Kaiser Permanente is a

24    registered corporation or does business in Washington. It is not registered nor does it do

25

26

27    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11
     S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd

28

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324   FAX (253) 627-8928

1   business here.

2       Any claims against Kaiser Permanente should be dismissed for lack of personal

3   jurisdiction.

4                           **IV. CONCLUSION.**

5       The defendants request an order of partial summary judgment dismissing the six

6   specific claims brought by plaintiff against the defendants for lack of sufficient evidence to

7   prove a prima facie case on each one of those claims.  Further, defendants seek an order

8   dismissing the negligent infliction of emotional distress claims by Stephanie and Rhiannon

9   Brannan, dismissing plaintiff's loss of consortium claims as separate claims, and dismissing

10  the entity referred to as "Kaiser Permanente" for lack of personal jurisdiction.

11      DATED this ___ day of September 2006.

12
                                    _Paula T Olson_
13                                  PAULA T. OLSON, WSBA#11584
                                    Of Attorneys for Defendants
                                    BURGESS FITZER, P.S.
14                                  1145 Broadway Street, Suite 400
                                    Tacoma, WA 98402-3584
15                                  (253) 572-5324
                                    Fax: (253) 627-8928
16                                  Email: paulo@burgessfitzer.com

17

18

19

20

21

22

23

24

25

26                                  BURGESS FITZER, P.S.
    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12    ATTORNEYS AT LAW
27  S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd         1145 BROADWAY STREET, SUITE 400
                                                    TACOMA, WASHINGTON 98402-3584
28                                                  (253) 572-5324    FAX (253) 627-8928

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on September ⌡ , 2006, I electronically filed the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send notification of

4 such filing to all counsel of record.  I hereby certify that no other parties are to receive

5 notice.

6 *Paula T Olson*

7 PAULA T. OLSON, WSBA No. 11584
Of Attorney for Defendants

8 BURGESS FITZER, P.S.
1145 Broadway, Suite 400

9 Tacoma, Washington 98402
Telephone: (253) 572-5324

10 Fax: (253) 627-8928
E-mail: paulao@burgessfitzer.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT  - 13
S:\WP\CASES\4830\PLEADINGS\msj.2.cm.wpd

BURGESS FITZER, P.S.
ATTORNEYS AT LAW
1145 BROADWAY STREET, SUITE 400
TACOMA, WASHINGTON 98402-3584
(253) 572-5324    FAX (253) 627-8928