UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL BRANNAN, individually, as Administrator of the estate of BARBARA BRANNAN, deceased, and as Parent and Natural Guardian for his minor children S.B. and R.B., <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWEST PERMANENTE, P.C.; KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST; MINDY ROTHBARD, M.D.; and MIKE G. LIN, M.D., <br><br> Defendants. | Case No. C05-5157FDB <br><br> ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Defendants move for partial summary judgment on six separate claims of negligence against Dr. Rothbard, loss of consortium (the three plaintiffs), negligent infliction of emotional distress (the two daughters), and claims against the entity referred to as "Kaiser Permanente." Defendants argue that plaintiff lacks proof of proximate cause on these claims. The specific claims are set forth in Paragraph 44 (in various subsections) and in the counts dealing with negligent infliction of emotional distress and loss of consortium set forth on pages 16 through 19; "Kaiser Permanente" is referenced throughout the Third Amended Complaint, although it is stated in Paragraph 6 that the term is a way to refer to the institutional defendants collectively.

ORDER - 1

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The elements of proof in a medical malpractice action encompass the four traditional elements of negligence: duty, breach, proximate cause, and damage or injury. *Caughell v. Group Health Co-Op of Puget Sound*, 124 Wn.2d 217, 233, 876 P.2d 898 (1994). Evidence is sufficient if it supports a "reasonable inference" as to all the elements. *Van Hook v. Anderson*, 64 Wn. App. 353, 358, 824 P.2d 509 (1992). A "reasonable inference" is founded on expert testimony rising to the level of reasonable medical certainty. *Miller v. Jacoby*, 145 Wn.2d 65, 72, 33 P.3d 68 (2001).

As to the duty element, under Washington law, a plaintiff must establish that the alleged injury resulted from the failure of a health care provider to follow the accepted standard of care. RCW 7.70.030(1). To establish a breach of the standard of care, a plaintiff must prove that "(1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of

ORDER - 2

1  Washington, acting in the same or similar circumstances; (2) Such failure was a proximate cause of
2  the injury complained of." RCW 7.70.040.

3        To prove causation, expert testimony is generally required. *Douglas v. Freeman*, 117
4  Wash.2d 242, 252, 814 P.2d 1160 (1991). Evidence is considered insufficient to support a finding of
5  proximate cause if, considering all the medical testimony presented, a jury would have to resort to
6  speculation or conjecture in determining the causal relationship. *McLaughlin v. Cooke*, 112 Wash.2d
7  829, 837, 774 P.2d 1171 (1989). Plaintiff must provide evidence that the alleged negligence "more
8  likely than not" caused the condition leading to the injury; that the defendants' actions "might have,"
9  "could have," or "possibly did" is not sufficient. *Merriman v. Toothaker*, 9 Wash. App. 810, 814,
10 515 P.2d 509 (1973). A "proximate cause" is one that in a natural and continuous sequence,
11 unbroken by an independent cause, produces the injury complained of and without which the
12 ultimate injury would not have occurred. *Attwood v. Albertson's Food Centers, Inc.* 92 Wash. App.
13 326, 330, 966 P.2d 351 (1998).

14 **DISCUSSION**

15 **1. Claims re Dr. Mindy Rothbard**

16       Defendants seek summary judgment on the following six claims against Dr. Rothbard:
17 Plaintiffs assert that Dr. Rothbard violated the standard of care because (1) she failed to work with
18 Dr. Lin in weaning Mrs. Brannan off habit forming drugs, (2) she prescribed Adderall to someone
19 with a predisposition towards addictive habit-forming drugs, (3) who drank a pot of coffee each
20 morning, and (4) who had a family history of hypertension, (5) that she failed to prescribe the lowest
21 possible dosage, and (6) failed to properly treat a mental health disorder ["condition" in the Third
22 Amended Complaint].

23       Defendants' motion on the cited claims against Dr. Rothbard are without merit and will be
24 denied for the following reasons.

25

26 ORDER - 3

1    Defendants argue that Plaintiffs cannot establish a breach of the standard of care in
2 prescribing Adderall.  Defendants also contend that there is no evidence that there are
3 contraindications to prescribing Adderall to an adult who drank coffee, had a family history of
4 hypertension, and was under a doctor's care for pain, and that simply because other doctors might
5 treat patients differently, is not evidence of medical malpractice.  Defendants assert that Plaintiffs
6 have no evidence that the failure of Dr. Rothbard to discuss with Dr. Olin her intention to prescribe
7 Adderall or Dr. Lin's desire to wean Mrs. Brannan from paid medication, or Mrs. Brannan's alleged
8 predisposition to habit forming medication was either negligent or more likely than not caused her
9 death.   Finally, Defendants contend that rather than failing to treat a mental health condition, in a
10 little over a month between Dr. Rothbard's evaluation and treatment of Mrs. Brannan with the
11 prescription for Adderall, Mrs. Brannan called and reported that she was much improved.

12    Plaintiffs respond that in the 27 subparagraphs to Paragraph 44 of the Third Amended
13 Complaint, the allegations of the deviations of the standard of care by Doctors Lin and Rothbard "in
14 toto" had the cumulative effect of exposing Mrs. Brannan to an increased risk of abnormal cardiac
15 arrhythmia, cardiovascular collapse, and death.  Plaintiffs argue that they must prove that the series
16 of interrelated negligent acts caused the injury or damages at issue and that a plaintiff need not prove
17 which negligent act caused the injury, providing that the plaintiff proves that the continuing negligent
18 treatment was the proximate cause of the injury. *Caughell v. Group Health Cooperative of Puget*
19 *Sound*, 124 Wn. 217, 876 P.2d 989 (1994).

20    Plaintiffs also point to the important information concerning Adderall/amphetamine salts
21 contained in the Physician's Desk Reference (PDR).  Plaintiffs then discuss the six alleged deviations
22 from the standard of care sought by Defendants.

23       (1) <u>Failure to Work with Dr. Lin.</u>  Plaintiffs respond that their expert, Dr. Melson
24 (psychiatrist), opines that the failure of Drs. Lin and Rothbard to communicate with one another

ORDER - 4

1  about their patient's medical history, their on-going treatment, and prescription of habit-forming
2  controlled substances was a breach of the standard of care.

3      (2) <u>Predisposition to Addiction to Habit -Forming Drugs</u>.  Plaintiffs respond that their
4  expert Dr. DePace (cardiologist, internist) opines that prescription of amphetamine salts "in patients
5  with a history of drug abuse" is a deviation from the standard of care.  Also, Plaintiffs note that the
6  PDR suggests a history of drug abuse is a "contraindication" for prescribing amphetamine salts.

7      (3) <u>Coffee Consumption</u>.  Plaintiffs respond that Dr.Melinek (assistant medical
8  examiner) opines that coffee consumption at a high level is a risk factor for amphetamine salt use
9  because caffeine, like amphetamine salts, is a stimulant and that these stimulants had an adverse
10 effect on Mrs. Brannan's hear, heart rate, and blood pressure.

11     (4) <u>Family History/Hypertension</u>.  Plaintiffs respond that the PDR cites moderate to
12 severe hypertension as a contra-indication for prescription of Adderall/amphetamine salts.  Dr.
13 DePace opines that Dr. Lin's misapprehension of Mrs. Brannan's blood pressure history was one of
14 the deviations from the standard of care that contributed to Mrs. Brannan's death, and that
15 prescribing amphetamine salts for a patient with Mrs. Brannan's history of high blood pressure was a
16 breach of the standard of care that contributed to her cardiac reaction and death.

17     (5) <u>Failure to Prescribe Lowest Possible Dosage</u>.  Plaintiffs respond that the PDR
18 directs physicians to prescribe amphetamine salts in the lowest feasible dose; that Dr. DePace
19 (cardiologist) concludes that it was a breach of the standard of care when Dr. Rothbard increased the
20 dosage of Mrs. Brannan's amphetamine salts over the telephone.  Furth Dr. DePace found that there
21 is no evidence that there is increased efficacy by increasing dosage.  Plaintiffs also cite Dr. Melson's
22 (psychiatrist) comments on the increased dosage being based solely on the patient's self-report over
23 the telephone.

24     (6) <u>Failure To Treat Properly a Mental Health Condition</u>.  Plaintiffs respond that Dr.
25 Melson (psychiatrist) will discuss four deviations from the standard of care by Dr. Rothbard: failure

26 ORDER - 5

properly to assess the patient's medical history and risk factors; failure properly to exchange information with Dr. Lin; failure to review Mrs. Brannan's pertinent medical history records before initiating treatment; and failure to verify her prognosis and subsequent decision to administer and prescribe amphetamine salts based entirely on uncorroborated patient self-reporting. Dr. Melson concludes that the cumulative effect of these departures from the standard of care exposed Mrs. Brannan to an increased risk of sudden onset of abnormal cardiac rhythms and cardiovascular collapse.

Defendants assert that the mere differing opinions of the experts on the above subjects does not prove negligence or a breach of the standard of care. Defendants note that there is no showing of addiction to pain medication or abuse of illegal drugs or alcohol, only that she may have been using too much pain medication; that the PDR states that Adderall is addictive in children, and that prolonged administration of amphetamines may lead to drug dependence – but Mrs. Brannan had only taken it for six months; there is no showing that 40 mg of Adderall a day was too much for Mrs. Brannan.

There is a genuine dispute of material fact with respect to the standard of care and causation in this case. The standard of care and causation are elements that Plaintiffs must prove by expert testimony, and the Plaintiffs have their experts in these areas who are prepared to testify. The issues Defendants raise for partial summary judgment regarding Dr. Rothbard's treatment cannot be resolved on a summary judgment motion, and the motion will be denied in this respect.

**2. Negligent Infliction of Emotional Distress**

Defendants move for dismissal of these claims as to Mrs. Brannan's daughters, Rhiannon and Stephanie for the reason that they did not see their mother die. Under Washington law, a plaintiff must have observed the accident's immediate aftermath and effect on the victim before rescuers and paramedics altered the scene, or the victim's location or condition. *Colbert v. Moomba Sports, Inc.*, 132 Wash.2d 916, 135 P.3d 485 (2006).

ORDER - 6

Plaintiffs respond that both girls were with their mother when she suddenly collapsed and crashed into a display cabinet in the Mt. St. Helen's gift shop, and they watched helplessly as she convulsed and struggled to breathe. There is no requirement, argue Plaintiffs that the girls must actually have witnessed their mother at the moment of death.

Defendants' argument on this point lack merit. Whether a plaintiff sees a loved one in an accident or arrives on the scene shortly thereafter was an issue in some of the cases, but in this case, Mrs. Brannan's daughters were present at her collapse. Defendants assert that what Plaintiffs perceive must be especially horrendous, but there is no such requirement set forth in the cases cited.

**3. Loss of Consortium**

Plaintiffs agree that because under the Washington Wrongful Death statute the decedent's personal representative may maintain a cause of action for damages against the person causing the death on behalf of the statutory beneficiaries, the claims stated in Counts VI, VII, and VIII are withdrawn as separate counts to the claim for wrongful death only.

**4. "Kaiser Permanente"**

Defendants argue that Kaiser Permanente is not a registered corporation, rather, it is a trade name and inaccurately describes Northwest Permanente or the Salmon Creek facility. Defendants argue that use of the trade name is misleading and confusing and that the trade name encompasses a very large group of health care providers. Therefore, Plaintiffs should refer only to the facility that is named in this case.

Plaintiffs acknowledge that Kaiser Permanente per se is not a party, that it is the collective term used to refer to the Defendant entities.

At trial, Plaintiffs will have to prove their allegations as to the Defendant entities and when they do so, Plaintiffs should precisely refer to the Defendant entities by their correct name. Plaintiffs should also refer to the Defendant entities precisely if use of the collective term is likely to be confusing.

ORDER - 7

There being no claims against Kaiser Permanente, Defendants' motion for summary judgment against Kaiser Permanente is moot.

## CONCLUSION

Now, therefore, in accordance with the foregoing discussion the Defendants' Motion for Partial Summary Judgment will be denied.

IT IS ORDERED: Defendants' Motion for Partial Summary Judgment [Dkt. # 111] is DENIED.

DATED this 3rd day of October, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 8